# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| **BANK OF THE WEST** | **CIVIL ACTION NO.: 16-1098** |
| v. | **JUDGE ELIZABETH ERNY FOOTE** |
| **DANNY K. PRINCE, ET AL** | **MAGISTRATE JUDGE HAYES** |

## MEMORANDUM RULING

Pending before the Court are cross Motions for Summary Judgment [Record Documents 46 & 47] filed by Defendant, Danny K. Prince ("Prince") and Plaintiff, Bank of the West ("BOW" or "the Bank"). For the reasons announced below, the Court **DENIES** both motions. The Court **ORDERS** additional briefing on matters addressed herein, and will hold a hearing to resolve remaining issues at a later date.

## FACTUAL AND PROCEDURAL HISTORY

Gladiator Energy Services, LLC, a Louisiana limited liability company, subsequently converted to a Texas limited liability company, GES Gladiator Energy Services of Texas, LLC (collectively "Gladiator" or "GES") before it ceased doing business. See Record Documents 46-1 & 52. GES, as lessee, executed Master Lease Agreement No. 2530 (the "Lease"), effective May 13, 2014, in favor of Summit Funding Group, Inc. ("Summit"). In accordance with the Lease, GES executed Equipment Schedule No. 12 (the "Equipment Schedule"), under which it leased certain movable equipment (the "Equipment") from Summit at a monthly base rent of $19,819.41. Id. At that same time, Defendants Prince and Steven

Cloy Gantt[1] ("Gantt") executed personal guaranties in favor of Summit. Summit later assigned its rights in and to the Lease and the Equipment Schedule to BOW. Id.

GES defaulted on its payments under the Lease by failing to make the monthly payment in February of 2016. Id. GES voluntarily surrendered the leased Equipment to BOW on July 13, 2016, at GES's yard in Arcadia, Louisiana. Prince initially indicated, and BOW agreed, that at the time GES surrendered the Equipment to BOW, the amount of past due rent under the lease was $138,735.87.[2] Id. However, in his opposition to BOW's Motion for Summary Judgment, Prince claims the actual amount owed as past due rent, based on a surrender date of July 13, 2016, is $118,916.46. See Record Document 50-2; 50, pp. 8-9.[3] BOW represents that the Equipment was then sold, and the Bank recovered net proceeds in the amount of $320,964.00. Record Document 47-1, p. 3.

BOW filed this suit seeking to recover from Gantt and Prince amounts due under the Lease, plus costs and attorneys' fees. It moved for summary judgment in May 2017, Record Document 13, and this Court held a hearing on the motion in July 2017, see Record Document 30. The Court orally granted in part and denied in part BOW's motion. The Court found that BOW was entitled to a judgment against Prince for amounts owed by GES under

---

[1] Gantt filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code after BOW filed its complaint. BOW, Summit, and Prince have all filed proofs of claim in the Gantt bankruptcy case. Proceedings in this matter against Gantt were stayed on October 20, 2016, due to his bankruptcy. See Docket Entry 10.

[2] Prince initially represented that the Equipment was surrendered on or before August 31, 2016. Record Document 46-1, p. 3.

[3] See also Record Document 47-1, p. 3, Plaintiff's Statement of Uncontested Facts (representing that the Equipment was surrendered on or about July 13, 2016).

the terms of the lease agreement, and granted the motion to that extent. The Court declined to declare an exact amount owed due to inconsistencies and uncertainties regarding the amount. Record Document 30, p. 2. The Court set a telephone conference and the parties were ordered to confer prior to the conference and attempt to resolve any uncertainties as to the specific amount owed. Id. Defendant retained new counsel and another telephone conference was set. See Record Document 34. At that conference, BOW was granted leave to file an amended complaint and Defendant raised new legal issues regarding the amount owed. Record Document 40. The Court set deadlines for BOW to file its amended complaint and for dispositive motions. Id. Now before the Court are cross motions for summary judgment regarding the amounts owed by Prince under the Lease.

### a. Plaintiff's Position

Plaintiff argues that, under the terms of the Lease, it is entitled to: (1) recovery of the Equipment; (2) liquidated damages equal to the present value of the remaining payments due under the Lease, discounted at a rate of 2% per annum; and (3) attorneys' fees, expenses, and costs incurred by BOW in enforcing the Lease documents. BOW cites the Lease itself as the authority for recovery of these amounts. Specifically, the Lease provides:

> Lessor may exercise one or more of the following remedies upon an Event of Default: . . . (iv) recover from Lessee all accrued and unpaid amounts, (v) recover from Lessee, as liquidated damages for loss of bargain and not as a penalty, the present value of all amounts to be paid by Lessee for the remainder of the Firm Term, or any successive period then in effect, discounted at the rate of 2% per annum, which amount will become immediately due and payable, (vi) demand that Lessee return the Equipment in strict compliance with the terms hereof . . . (xi) recover from Lessee all

amounts incurred by Lessor in enforcing its rights and remedies hereunder, including, but not limited to, Lessor's repossession costs, transportation costs, storage costs, insurance costs, repair and maintenance costs, appraisal costs, remarketing costs and commissions, disposal costs, filing fees, reasonable attorneys' fees, and reasonable internal costs. . . .

Record Document 47-3, p. 4. Additionally, the Lease provides that interest on unpaid recoverable amounts will accrue at a rate equal to the lesser of 1.5% per month and the highest rate allowed under applicable law. Id.

The equipment has already been returned and sold at auction. Thus, BOW calculates the amount owed as follows:

| | |
|---|---:|
| Original Balance Due ($19,819.41 x 46 months) | $911,692.86 |
| Less Payments Made (12 payments) | (237,832.92) |
| Gross Remaining Balance (34 payments) | $673,859.94 |
| | |
| Liquidated Damages (34 payments at $19,819.41 discounted at 2%) | $654,592.79 |
| Less Sales Proceeds | (320,964.00) |
| Net Amount Owed | $333,628.79 |

Record Document 47-14, p. 11. BOW thus seeks summary judgment against Prince in the amount of $333,628.79, plus interest at the rate of 1.5% per month from September 9, 2016[4] until paid, plus attorneys' fees and expenses, and costs incurred in enforcing the Lease and related documents.

**b. Defendant's Position**

Prince does not dispute that BOW is entitled to past due monthly rentals from the time of default in February 2016 until BOW recovered the Equipment from GES on July 13,

---

[4]BOW represents that this is the date the Equipment was sold at auction, and therefore the date on which the amount of liquidated damages could be determined. Record Document 47-14, p. 10.

2016. See Record Document 44, p. 12; 46-2, p. 8; 50, p. 8. He calculates this amount to be $118,916.46. Record Document 50, p. 8. However, Prince does dispute that Plaintiff can also recover accelerated rent after having recovered the Equipment. He argues that because the Equipment was located in Louisiana when it was surrendered following default, Plaintiff's remedy is limited by the Louisiana Lease of Movables Act ("LLMA"), La. R.S. §§ 9:3301 et seq. Specifically, Louisiana Revised Statute 9:3318 provides that, in the event of default by the lessee, the lessor may: (1) file an action to recover accelerated rental payments and additional amounts due under the lease; or (2) "cancel the lease, recover possession of the leased property and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement, as provided under R.S. 9:3320 through 3328." La. R.S. § 9:3318(A)(1). The statute explicitly states that these two remedies are not cumulative; the lessor "may not seek to collect accelerated rental payments under the lease and also to cancel the lease and recover possession of the leased equipment." La. R.S. § 9:3318(A)(2). Thus, because BOW has already recovered possession of the leased property, Prince claims that BOW is precluded by Louisiana law from also recovering accelerated rent, even if characterized as reasonable liquidated damages. Instead, BOW may only recover "such additional amounts and liquidated damages" as allowed by the Lease that are permitted by La. R.S. §§ 9:3320-3328.[5] Record Document 46-2, p. 19. Accordingly, Prince seeks summary judgment to this effect. Specifically, he asks the Court to grant judgment in favor of BOW in the principal amount

---

[5]Prince suggests this includes past-due rentals, financing charges, interest, storage fees, and repair costs. Record Document 46-2, p. 21.

of $118,916.46, together with contractual interest on the amount owed from the date this Court determines the exact amount due until paid. Record Document 50, pp. 8-9. Further, while Prince admits that BOW has incurred attorneys' fees and expenses, he submits that BOW should not be allowed to recover fees and expenses incurred in collection of amounts prohibited by law. Id.

## STANDARD

Federal Rule of Civil Procedure 56(a) directs that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[6] Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When the burden at trial will rest on the non-moving party, the moving party need not produce evidence to negate the elements of the non-moving party's case; rather, it need only point out the absence of supporting evidence. See Celotex, 477 U.S. at 322-323.

If the movant satisfies its initial burden of showing that there is no genuine dispute of material fact with the motion for summary judgment, the nonmovant must demonstrate that there is, in fact, a genuine issue for dispute at trial by going "beyond the pleadings"

---

[6]Rule 56 was amended effective December 1, 2010. Per the comments, the 2010 amendment was intended "to improve the procedures for presenting and deciding summary judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." Therefore, the case law applicable to Rule 56 prior to its amendment remains authoritative, and this Court will rely on it accordingly.

and designating specific facts for support. Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994). "This burden is not satisfied with 'some metaphysical doubt as to the material facts,'" by conclusory or unsubstantiated allegations, or by a mere scintilla of evidence. Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). However, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1985) (internal citations omitted); Reid v. State Farm Mut. Auto Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986) (the court must "review the facts drawing all inferences most favorable to the party opposing the motion"). While not weighing the evidence or evaluating the credibility of witnesses, courts should grant summary judgment where the critical evidence in support of the nonmovant is so weak and tenuous that it could not support a judgment in the nonmovant's favor. Little, 37 F.3d at 1075.

Additionally, Local Rule 56.1 requires the moving party to file a statement of material facts as to which it contends there is no genuine issue to be tried. Pursuant to Local Rule 56.2, the party opposing the motion for summary judgment must set forth a "short and concise statement of the material facts as to which there exists a genuine issue to be tried." All material facts set forth in the statement required to be served by the moving party "will be deemed admitted, for purposes of the motion, unless controverted as required by this rule." Local Rule 56.2.

## LAW AND ANALYSIS

BOW does not dispute that this matter is governed by the LLMA. Instead, BOW argues that the LLMA allows for recovery of the leased property as well as liquidated damages, and here, the liquidated damages are contractually provided to equal the present value of all amounts to be paid by the lessee for the remainder of the Lease, discounted at the rate of 2% per annum. See Record Document 49, p. 8; 47-3, p. 4. Thus, according to BOW, it is not seeking to recover accelerated rent after having exercised its option to terminate the Lease and recover the property. Instead, it is exercising its rights under the liquidated damages provision, which happens to measure damages using future rent payment amounts.

The LLMA provides, "Whenever a lessor seeks to enforce remedies under any lease of movable property, no matter where consummated, following the lessee's default and the leased property is then located in this state, the lessor shall comply with the remedy provisions under Part IV of this Chapter. . . ." La. R.S. § 9:3303(D). Part IV encompasses §§ 9:3318-3330. Section 3318(A) generally provides that, in the event of default, a lessor can file a collection action to recover accelerated rental payments and additional amounts due and outstanding or that will become due in the future; or cancel the lease, recover possession of the leased property, and recover liquidated damages contractually provided for under the lease agreement. The remedies are not cumulative; a lessor cannot both collect accelerated rental payments and also cancel the lease and recover possession of the leased equipment.

Additionally, § 3325, entitled "Recovery of liquidated damages," provides that a lessor can commence an ordinary proceeding to recover "amounts then due and owing under the lease as well as such liquidated damages as may be provided under the lease agreement." La. R.S. 9:3325(A). However, a "court shall award liquidated damages to the lessor only if it finds the amount thereof to be reasonable. If the court finds the amount of liquidated damages to be unreasonable, or if there is no such stipulation, then the court may, in its discretion, award liquidated damages to the lessor." La. R.S. § 9:3325(B). A survey of cases decided by Louisiana appellate courts suggests this reasonableness determination is the central issue when a lease provision purports to award damages calculated using future rental amounts.

In Cenval Leasing Corp. v. Nunnery, 577 So. 2d 1042 (La. App. 4 Cir. 1991), the Louisiana Fourth Circuit Court of Appeal upheld a damages award that included future rental amounts following the termination of a lease and return of the leased item. The court noted that the parties had stipulated to the measure of damages and nothing in the record indicated the damages were unreasonable. Cenval, 577 So. 2d at 1046.

In AT&T Information Systems, Inc. v. Smith, 593 So. 2d 673 (La. App. 1 Cir. 1991), the defendant ceased making payments on its lease of telephone equipment. Under the terms of the lease, upon default, the plaintiff could recover both the leased equipment and termination charges of "one-half (½) of the monthly payments for the original term or 70 percent (70%) of the sum of all remaining monthly payments, whichever is less." AT&T Info. Sys., Inc., 593 So. 2d at 674. The trial court invalidated this provision, but the

Louisiana First Circuit Court of Appeal reversed. The appellate court noted that the LLMA "contemplates and permits reasonable liquidated damages and repossession of the leased property following lessee's default." Id. at 676 (emphasis in original). The court then remanded the matter so that the trial court could take additional evidence on the reasonableness of the damages. Id.

In McFillen Rent-A-Car, Inc. v. Brierty, 625 So. 2d 364, 367 (La. App. 3 Cir. 1993), the lease at issue provided for attorney's fees of 25% of the total amount remaining due under the lease contract. The court found this to be an agreement to pay stipulated damages which was subject to a showing of reasonableness. McFillen Rent-A-Car, Inc., 625 So. 2d at 367. Ultimately, the court found the stipulated amount to be unreasonable in light of the issues involved, the brevity of the trial, and the amount of discovery done. Therefore, pursuant to La. R.S. § 9:3325(B), the court set an amount of liquidated damages that it found to be a reasonable attorney's fee. Id. at 368.

Defendant additionally cites American Leasing Co. of Monroe v. Lannon E. Miller & Son, General Contracting, Inc., 469 So. 2d 325 (La. App. 2 Cir. 1985). In that case, the parties entered into a 36-month lease of a tractor and accessories. American Leasing, 469 So. 2d at 327. The defendant-lessee made 19 monthly rental payments before notifying the plaintiff-lessor that he was unable to fulfill his continued obligations under the lease. When the defendant returned the equipment, $34,750 in future rentals was owed. The plaintiff then sold the equipment for $20,000. Id. The lease provided that, upon default, the lessor could terminate the lease, recover the equipment, and collect unpaid rent for the

balance of the term, plus damages. Id. First, the court held that Louisiana law only allowed accelerated rentals or cancellation of the lease, not both.[7] Then, relying on Louisiana Civil Code articles 2005 and 1995, the court held that "[a] stipulated damage clause should reasonably approximate the lessor's loss and profits and should not be penal." Id. at 328. Additionally, "When a stipulated damages provision is enforced, the court must determine the reasonableness of the amount by inquiring whether the parties, by the clause, truly attempted to reasonably approximate actual damages." Id. at 329. The court found that the language which allowed for termination of the lease and the balance of the rent, plus damages, was not a stipulated damages clause. Furthermore, the court would not enforce such a clause because it "requires *full* payment of the balance of the [future] rent whether default occurs in the first month or the last month of the lease." Id. (emphasis and alteration in original). Ultimately, the court remanded the case to allow the lessor an opportunity to prove actual damages sustained as a result of the lessee's default. Notably, the court would not declare the principle judgment amount[8] to be per se unreasonable; it simply held that such a determination could only be made by the trial court on additional evidence. Id.

---

[7]The court cited La. R.S. 9:3261, which at that time provided: "In the event of default by the lessee, the lessor of movable property has the option to enforce judicially all of his rights under the lease contract, including, if the lease so provides, his right to accelerate all rentals that will become due in the future for the full base term of the lease, or to cancel the lease and to exercise the rights granted him under this chapter." The statute was repealed in July 1985.

[8]The principle judgment amount was $14,750. This is the difference between past and future rentals due under the 36-month lease ($34,750) and the amount the tractor was sold for ($20,000) by the lessor. See American Leasing, 469 So. 2d at 326.

This Court interprets the above caselaw to consistently stand for one proposition: the parties may stipulate to whatever measure of damages they choose, but the Court must ultimately determine that the damages awarded are reasonable.

**a. Are the damages sought by BOW reasonable?**

While Prince claims this Court has "vast discretion" to make its own damages calculation, Record Document 46-2, p. 21, BOW contends the Court should only make its own calculation if it finds the stipulated damages amount to be unreasonable, Record Document 49, pp. 12-13 (citing Ouachita Equip. Rental Co., Inc. v. Baker Brush Co., 388 So. 2d 477, 480 (La. App. 2 Cir. 1980) ("[W]here the parties to a contract stipulate the measure of damages in case of default, our courts generally do not inquire whether the actual damage suffered equals or approximates the agreed amount.")). BOW contends that the amount it seeks to recover, $333,628.79, is reasonable because it is commensurate with the Bank's actual cash loss of $273,350.99. BOW states:

> The parties' effort at estimating actual damages in the liquidated damages clause turns out to have been on target, considering both a cash loss and damages for loss of return on investment. The liquidated damages calculated according to Section 20(v) of the Lease is $333,628.79, and the actual cash loss (exclusive of any damages for loss of return on investment) to the Bank as a result of the lessee's breach was $273,350.99–a difference of only approximately $60,000.00 on an investment by the Bank of $832,147.91.

Record Document 49, p. 7.

BOW explains that its investment in the Lease was $832,147.91. This amount is reflected in a promissory note executed by Summit in favor of BOW, Record Document 47-12, and BOW claims that it paid Summit this amount in connection with the assignment of

the Lease, Record Document 47-14, p. 9. The "actual cash loss" of $273,350.99 is calculated by subtracting $237,832.92 (the payments made) and $320,964.00 (the proceeds from the sale of the Equipment) from $832,147.91 (the promissory note amount). See Record Document 47-14, p. 15.

Prince challenges this argument and claims the amount due to BOW under the promissory note has no bearing on any actual or potential damages sustained by BOW as the assignee of Summit under the Lease. He characterizes the facts as follows: GES executed the Lease in favor of Summit; Summit assigned its rights under the Lease to BOW pursuant to a security agreement and assignment of the Lease, by virtue of which it also granted a security interest in the Equipment to BOW; the security agreement secures the obligations of Summit to BOW under a non-recourse promissory note executed by Summit in favor of BOW in the principle amount of $832,147.91. Record Document 50, p. 3. According to Prince, when GES defaulted, Summit owed nothing to BOW because BOW's rights to collect under the note were limited to the Equipment. Id. Furthermore, Prince claims that the "net loss to the Bank" claimed by BOW of $273,350.99 is the amount owed under the non-recourse note, not the Lease, after crediting payments made and amounts recovered from the sale of the Equipment. Id. Prince claims that BOW now seeks to recover from him the damages allegedly owed to Summit, but that Summit has not, and never will, incur. Id. at 4. Prince further claims that the amount of damages sought by BOW is 280% greater than the past due amounts under the Lease and, as a result, this amount is per se unreasonable. Record Document 46-2, p. 21.

BOW responds that it has submitted competent summary judgment evidence, through the affidavit of George Alpi (the Vice President of BOW), that the amount of the Bank's initial investment in the Lease was $832,147.91, and that this investment amount was the result of the costs of the particular equipment GES chose. Record Document 53, p. 2. BOW claims that its initial expenditure to acquire the Lease is a crucial consideration for the Court in making its reasonableness determination. Id. at 3.

Plaintiff prays for judgment in its favor in the amount of $333,628.79, plus interest at the rate of 1.5% per month from September 9, 2016 until paid, plus attorneys' fees, expenses, and costs incurred by the Bank in enforcing the Lease. Record Document 47, p. 2; 47-14, p. 17. Prince seeks a judgment against him and in favor of BOW in the principal amount of $118,916.46, plus interest on the amount owed under the Lease from the date the Court determines the precise amount due until paid. He further submits that BOW should not be allowed to recover attorneys' fees and expenses to the extent such fees and expenses were incurred in the collection of amounts he claims are prohibited by Louisiana law. Record Document 50, pp. 8-9. Because a number of material facts remain in dispute, both parties' motions are **DENIED**.

The Court identifies the following issues in need of resolution: (1) the amount of past due rent; (2) the reasonableness of the liquidated damages sought and the exact amount, if any, of liquidated damages to be awarded; (3) the date(s) on which interest began and/or will begin to accrue; and (4) the amount of attorneys' fees. The Court requires additional briefing on these matters. Plaintiff is to file briefing addressing each of these issues by **July 2, 2018**. Plaintiff's briefing should specifically include an updated

accounting of the attorneys' fees sought. Defendant must file briefing on each of the issues by **July 23, 2018.** Once briefing is completed, the Court intends to set an evidentiary hearing to resolve all remaining issues.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the parties' Motions for Summary Judgment [Record Documents 46 & 47]. A hearing to resolve the remaining issues in this case will be set at a later date.

**THUS DONE AND SIGNED** this 7th day of June, 2018 in Shreveport, Louisiana.

ELIZABETH ERNY FOOTE
UNITED STATES DISTRICT JUDGE