UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

_____

**BANK OF THE WEST**              **CIVIL ACTION NO.: 16-1098**

**v.**                            **JUDGE ELIZABETH ERNY FOOTE**

**DANNY K. PRINCE, ET AL**        **MAGISTRATE JUDGE HAYES**

_____

## MEMORANDUM RULING

The parties, Bank of the West ("the Bank") and Danny K. Prince ("Prince"), filed cross motions for summary judgment on the issue of damages owed under a lease agreement. Record Documents 46 & 47. The Court denied both motions and ordered the parties to file supplemental briefing on select remaining issues. Record Document 54. After reviewing the parties' briefs, the Court held a status conference to inquire whether the parties believed a hearing was necessary. The parties represented that a hearing was unnecessary and the issues were ripe for resolution by the Court. The Court issues this ruling to resolve those remaining issues.

## FACTUAL AND PROCEDURAL HISTORY

Gladiator Energy Services, LLC, a Louisiana limited liability company, subsequently converted to a Texas limited liability company, GES Gladiator Energy Services of Texas, LLC (collectively "Gladiator" or "GES") before it ceased doing business. See Record Documents 46-1 & 52. GES, as lessee, executed Master Lease Agreement No. 2530 (the "Lease"), effective May 13, 2014, in favor of Summit Funding Group, Inc. ("Summit"). In accordance

with the Lease, GES executed Equipment Schedule No. 12 (the "Equipment Schedule"), under which it leased certain movable equipment (the "Equipment") from Summit at a monthly base rent of $19,819.41. Id. At that same time, Defendants Prince and Steven Cloy Gantt ("Gantt") executed personal guaranties in favor of Summit. Summit later assigned its rights in and to the Lease and the Equipment Schedule to the Bank. Id.

GES defaulted on its payments under the Lease by failing to make the monthly payment in February of 2016. Id. GES voluntarily surrendered the leased Equipment to the Bank on July 13, 2016, at GES's yard in Arcadia, Louisiana. The Equipment was sold at auction on September 9, 2016. Record Document 55, p. 8. The Bank filed this suit seeking to recover from Gantt[1] and Prince amounts due under the Lease, plus costs and attorneys' fees. It moved for summary judgment in May 2017, Record Document 13, and this Court held a hearing on the motion in July 2017, see Record Document 30. The Court orally granted in part and denied in part the Bank's motion. The Court found that the Bank was entitled to a judgment against Prince for amounts owed by GES under the terms of the lease agreement, and granted the motion to that extent. The Court declined to declare an exact amount owed due to inconsistencies and uncertainties in the Plaintiff's filings regarding the amount owed. Record Document 30, p. 2. Prince later retained new counsel and raised new legal issues regarding the amount owed. The Bank filed an amended

---

[1]Gantt filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code after the Bank filed its complaint. The Bank, Summit, and Prince have all filed proofs of claim in the Gantt bankruptcy case. Record Document 46-3, p. 2. Proceedings in this matter against Gantt were stayed on October 20, 2016, due to his bankruptcy.

complaint [Record Document 43] and the parties filed cross motions for summary judgment regarding the amounts owed by Prince under the Lease [Record Documents 46 & 47].

In its motion, the Bank argued that it was owed the negotiated damages (liquidated damages equal to the present value of the remaining payments due under the Lease, discounted at a rate of 2% per annum), plus interest, costs and attorneys' fees. Record Document 47. In his motion, Prince did not dispute that the Bank is entitled to past-due monthly rent payments from the time of default in February 2016 until the Bank recovered the Equipment on July 13, 2016. Record Document 46. He calculated this amount to be $118,916.46. Record Document 50, p. 8. However, Prince argued that the Bank could not also recover accelerated rent, even if "disguised" as a measure of damages, after having recovered the Equipment. Prince's argument was based on the Louisiana Lease of Movables Act ("LLMA"). Specifically, Louisiana Revised Statute 9:3318 provides that in the event of default by the lessee, the lessor may: (1) file an action to recover accelerated rental payments and additional amounts due under the lease; or (2) "cancel the lease, recover possession of the leased property and recover such additional amounts and liquidated damages as may be contractually provided under the lease agreement, as provided under R.S. 9:3320 through 3328." La. R.S. 9:3318(A)(1). The statute explicitly states that these two remedies are not cumulative; the lessor "may not seek to collect accelerated rental payments under the lease and also to cancel the lease and recover possession of the leased equipment." Id. 9:3318(A)(2).

As for liquidated damages, § 3325 of the LLMA provides that a lessor can commence an ordinary proceeding to recover "amounts then due and owing under the lease as well as such liquidated damages as may be provided under the lease agreement." Id. 9:3325(A). However, it instructs that a "court shall award liquidated damages to the lessor only if it finds the amount thereof to be reasonable. If the court finds the amount of liquidated damages to be unreasonable, or if there is no such stipulation, then the court may, in its discretion, award liquidated damages to the lessor." Id. § 9:3325(B). After surveying Louisiana case law, this Court concluded that the reasonableness determination is the central issue when a lease provision purports to award damages calculated using future rental amounts. See Record Document 54, pp. 9-12. Ultimately, the parties may stipulate to whatever measure of damages they choose, but this Court must determine that the damages awarded are reasonable. Id. at 12.

The Court determined that a number of fact issues precluded summary judgment and therefore denied both parties' motions. The Court identified the following issues in need of resolution: (1) the amount of past-due rent; (2) the reasonableness of the liquidated damages sought and the exact amount, if any, of liquidated damages to be awarded; (3) the date(s) on which interest began and/or will begin to accrue; and (4) the amount of attorneys' fees. The Court ordered additional briefing on these matters, which is now complete.

## DISCUSSION

**(1) The amount of past-due rent**

The parties agree that the amount of past-due rent is $118,916.46. The Court will award this amount as past-due rent.

**(2) The reasonableness of the liquidated damages sought and the exact amount, if any, of liquidated damages to be awarded**

The Bank argues that the liquidated damages provided for in the Lease are reasonable given the loss it has incurred, and the damages provision should be enforced as written. Citing <u>American Leasing Co. of Monroe v. Lannon E. Miller & Son, General Contracting, Inc.</u>, 469 So. 2d 325 (La. App. 2d Cir. 1985), the Bank claims the Court's focus in determining whether a particular liquidated damages clause is reasonable should be on the amount of actual damage and lost profit.[2] The Bank argues that the amount of

---

[2]In <u>American Leasing</u>, the court stated:

> A stipulated damage clause should reasonably approximate the lessor's loss and profits and should not be penal. CC Art. 2009 indicates that proof of actual damages is not a pre-requisite to recovery. When a stipulated damages provision is enforced, the court must determine the reasonableness of the amount by inquiring whether the parties, by the clause, truly attempted to reasonably approximate actual damages. Stipulated damages may exceed, to some degree found reasonable by the court, actual damages.

469 So. 2d at 328-29. The court later concluded:

> In summary, we hold that the LMA does not allow a lessor to recover all future rentals after cancellation of a lease because of the lessee's default and after the lessee is dispossessed, but recovery of only such damages as are found reasonable by the court, whether or not those damages are stipulated.

<u>Id.</u> at 329.

damages it has incurred closely approximates the amount sought, and if these damages were combined with lost potential profits, the total figure would exceed the amount sought. Record Document 55, pp. 4-5. Plaintiff calculates its losses as follows:

| | |
|---|---|
| Purchase of the Lease | $832,147.91 |
| Less payments made (12 payments) | (237,832.92) |
| Less proceeds from the sale of the Equipment | (320,964.00) |
| Total loss | $273,350.99 |

Had the defendant fulfilled the terms of the lease, the Bank claims it would have received an anticipated profit as follows:

| | |
|---|---|
| Total Lease payments (46 payments) | $911,692.86 |
| Less total investment (promissory note amount) | (832,147.91) |
| Expected profit | $79,544.95 |

The Bank thus calculates its actual damages as $352,895.94 ($273,350.99 + $79,544.95), which is $19,267.15 more than the $333,628.79[3] provided for under the terms of the Lease. Id. at 5.

Prince argues that the Bank may not recover what is essentially the full amount of future rent under the Lease, disguised as liquidated damages. To allow this recovery would

---

[3]The Bank calculates the amount owed as follows, see Record Document 47-14, p. 11:

| | |
|---|---|
| Original Balance Due ($19,819.41 x 46 months) | $911,692.86 |
| Less Payments Made (12 payments) | (237,832.92) |
| Gross Remaining Balance (34 payments) | $673,859.94 |
| | |
| Liquidated Damages (34 payments at $19,819.41 discounted at 2%) | $654,592.79 |
| Less Sales Proceeds | (320,964.00) |
| Net Amount Owed | $333,628.79 |

be against Louisiana public policy which requires lessors to choose between the mutually exclusive optional remedies. He claims that because the Bank is only seeking damages in the amount of the future, unearned rental payments due under the Lease (discounted by 2%), which is expressly prohibited by Louisiana law, the issue of the reasonableness of allowable, liquidated damages is not before the Court. Instead, Prince seeks a judgment against him for $118,916.46, the amount of past-due rent.[4]

Prince further argues that the proper measure of damages for breach of the Lease must be based on the damages of the lessor, rather than the lessor's lender. He argues that the Bank's total investment in the Lease has no bearing on the appropriate measure of damages for breach of the underlying Lease. He also claims that the cost of a leased item is not relevant to the damages for breach of a lease of the item. And, argues Prince, even if it were relevant, the Bank's actual losses arise not from the total investment of the lessor, Summit, but from the Bank's alleged damages as a result of Summit's default under the non-recourse promissory note. Because the note was non-recourse, Summit, the actual lessor, has not sustained any loss. Record Document 56, pp. 16-17.

The Court agrees with Prince that lessors cannot be allowed to circumvent Louisiana law by simply including a lease provision allowing liquidated damages in the amount of future rent payments for the remaining term of the lease agreement. This Court finds the formula provided in the Lease for calculating liquidated damages to do just that, and will

---

[4]Prince additionally claims that enforcement of the liquidated damages provision would violate "Louisiana's strong policy of requiring a judgment debtor's interest in any property (other than property subject to a security interest under Article 9) to be appraised prior to sheriff's sale." Record Document 56, p. 13.

therefore not enforce it as written. Nonetheless, the Court finds that some award of reasonable damages is warranted. Specifically, the Court will award $154,434.53 in liquidated damages to the Bank. The Court arrived at this number by considering the Bank's initial investment in the Lease, $832,147.91. The Court understands this amount to include all 46 payments that would potentially become due under the Lease, purchased at a discounted rate. The Court then subtracts the payments made, $237,832.92, and the proceeds from the sale of the equipment, $320,964.00, resulting in $273,350.99. Because the Court understands this amount to include the six months of past-due rent that the parties agree is owed, the Court subtracts that amount as well, $118,916.46, and is left with $154,434.53. The Court believes this amount is sufficient to make the Bank whole, and is reasonable.

**(3)** **The date(s) on which interest began and/or will begin to accrue**

The parties agree that, generally speaking, interest should run from the date of judicial demand, July 26, 2016.[5] As to the liquidated damages, the Bank claims that interest should run from September 9, 2016, the date the equipment was sold at auction, as this is the date on which the precise amount owed became ascertainable. See Record Document 55, p. 8; 47-14, p. 10. The Court will award interest on the past-due rent, $118,916.46, from the date of judicial demand, July 26, 2016. The Court believes the

---

[5]Prince asks the Court not to award interest on the amount he was willing to pay for past-due rent, $118,916.46, if the Court agrees that Prince is not obligated to pay the total amount the Bank seeks to collect. However, if the Court does award interest, Prince submits that the proper date for calculating interest is the date of judicial demand. See Record Document 56, pp. 17-18.

general rule is also applicable to the award of damages– that is, interest on the damages should run from the date of judicial demand. See Trans-Glob. Alloy Ltd. v. First Nat. Bank of Jefferson Parish, 583 So. 2d 443, 457 (La. 1991). However, because the Bank argues for a result that is more favorable to Prince, the Court will award interest on the damages,$154,434.53, from September 9, 2016.

**(4)    The amount of attorneys' fees**

The "Remedies" section of the lease agreement provides for payment of reasonable attorneys' fees and costs. Record Document 47-3, p. 4. The affidavit submitted by Plaintiff's counsel indicates that the Bank has thus far incurred $43,591.00[6] in attorneys' fees and $1,072.68 in costs, for a total of $44,663.68 in recoverable fees and expenses. Record Document 55-1, p. 2. The Bank argues that these fees and costs are reasonable given the amount in controversy, the complexity of the litigation, and the duration of the case. Record Document 55, p. 10.

Prince does not object to the hourly rates set forth in Plaintiff's counsel's affidavit, nor does Prince contest that the services set forth in the billing narratives were rendered by Plaintiff's counsel's firm. However, Prince maintains his argument that, to the extent the Bank's attorneys' fees and expenses pertain to time spent on attempting to collect damages to which the Bank is not entitled under Louisiana law, they should be disallowed. Record Document 56, pp. 18-19.

The Court will discount the requested attorneys' fees by $5,000 to account for the

---

[6]The Bank's brief inconsistently indicates that it has incurred $44,451.00 in attorneys' fees. Record Document 55, p. 10.

Court's ruling in Prince's favor regarding the liquidated damages provision. The Court agrees that application of the provision as written would allow lessors to circumvent Louisiana law. The Court considers this amount reasonable considering both parties' arguments and the overall outcome of this matter. Accordingly, the Bank is awarded $39,663.68 for attorneys' fees and costs.

## CONCLUSION

For the foregoing reasons, Prince is **ORDERED** to pay to the Bank: (1) $118,916.46 for past-due rent, with interest from the date of judicial demand, July 26, 2016; (2) $154,434.53 as damages under the Lease, with interest from September 9, 2016; and (3) attorneys' fees in the amount of $39,663.68. A judgment consistent with this ruling will issue herewith.

**THUS DONE AND SIGNED** this 14th day of August, 2018 in Shreveport, Louisiana.

ELIZABETH E. FOOTE
UNITED STATES DISTRICT JUDGE